Patricia J. SKONIECZNY, Petitioner

v.

DEPARTMENT OF COMMUNITY AND ECONOMIC DEVELOP-
MENT, Respondent.

Barbara A. Baldwin, Petitioner

v.

Department of Community and Economic Development, Respondent

Kathleen T. McGuire, Petitioner

v.

Department of Community and Economic Development, Respondent

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 25, 2004.

Decided July 20, 2004.

Patricia J. Skonieczny, petitioner, pro se.

Anthony A. Ditka, Pittsburgh, for intervenor, Borough of Economy.

BEFORE: PELLEGRINI, Judge, and COHN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge PELLEGRINI.

██  Patricia J. Skonieczny (Skonieczny), Barbara A. Baldwin (Baldwin) and Kathleen T. McGuire (McGuire) appeal *pro se* from an order of the Department of Community and Economic Development (Department) dismissing each of their individual complaints challenging the debt proceedings of Economy Borough (Borough) under the Local Government Unit Debt Act (Debt Act), 53 Pa.C.S. §§ 8001–8271.[1]

---

1. The Debt Act establishes controls over a local government that seeks to borrow money on bonds or notes. 53 Pa.C.S. § 8001(d). The purpose of the Debt Act is to require disclosure of a project to ensure lawfulness and public notice while respecting the discretion of a governmental body to pursue a major construction project in a reasonable and business-like manner. *Borough of Brentwood v. Department of Community Affairs*, 657 A.2d 1025, 1027 n. 5 (Pa.Cmwlth.1995), *overruled in part by County of Northampton v. Department of Community and Economic Development*, 573 Pa. 401, 825 A.2d 1245 (2003).

On July 23, 2003, the Borough enacted an ordinance authorizing the incurrence of lease rental indebtedness pursuant to the Debt Act. On August 1, 2003, the Borough submitted the ordinance along with an application to the Department for Approval and Exclusion Proceedings of Proposed Increase of Lease Rental Indebtedness as self-liquidating in the amount of $11,850,000 for the Economy Borough Municipal Authority's (Authority) 2003 Guaranteed Sewer Revenue Bonds. The Borough intended to guaranty a bond issued by the Authority whose stated purpose was to refund a portion of the Authority's line of credit notes (the Pennsylvania Infrastructure Investment Authority loan, a/k/a the Pennvest Loan)[2] from Sky Bank (Bank Notes) and fund capitalized interest during the period of construction of the Authority's new wastewater treatment plant, pump stations and extensions to its sanitary collection and treatment system (Phase II Sewer System project). The Bank Notes were not a debt guaranteed by the Borough, and the debt service related to them was not governed by the Act. Skonieczny, Baldwin and McGuire individually filed complaints with the Department to challenge the legality of these debt proceedings. Because there is very little overlap in their contentions, we will address each appeal separately.

## I. Skonieczny's Complaint

In her nine-count complaint, Skonieczny alleged, *inter alia*, that the Borough was incurring debt above its statutory limit; the Borough did not obtain realistic cost estimates because the preliminary cost estimates for the Phase II Sewer System (submitted to the Department in connection with the Pennvest Loan in 2002) were not consistent with the preliminary cost estimates submitted with the debt proceedings; the official action taken by the Mayor of the Borough to sign the ordinance did not take place at a meeting open to the public as required by the Debt Act; and the Authority and the Borough were attempting to defraud the taxpayers by its submissions in the debt proceedings. In response, the Borough filed an answer and a motion to dismiss Skonieczny's complaint.

The Department granted the Borough's motion for the following reasons: first, it found that Skonieczny was misinterpreting 53 Pa.C.S. § 8022 (relating to limitations on incurring of other debt). Although she argued that the Debt Act did not allow a local government unit to incur debt above its statutory debt limit even if it was simultaneously applying for an exclusion of the same amount, the Department stated that 53 Pa.C.S. § 8022 did allow for a simulta-

---

**2.** In 1991, the Borough prepared its initial sewage facility in accordance with Act 537, the Pennsylvania Sewage Facilities Act, Act of January 24, 1966, P.L. (1965) 1535, 35 P.S. §§ 750.1—750.20a. In 1996, the Authority began developing plans, made revisions and had an estimated total cost for the project of $37,429,431. Borough Council members became involved with the project reviewing costs. In March 2002, a summary of the Authority's cost estimates were estimated at $33,476,390. The Authority received partial financing for the project by receiving a loan in the amount of $15,702,645 through Pennvest with the Borough providing a guaranty for the debt. In May 2002, the Borough Council enacted an ordinance authorizing the incurrence of lease rental debt in the amount of $15,702,645 to guaranty the Authority's Pennvest loan. The Borough filed an application for approval of the Pennvest Guaranty with the Department which included a Report on Self–Liquidating Debt of the Borough which estimated the total construction costs for the project as $33,476,390. The report explained that the Pennvest Guaranty would be excluded as self-liquidating because the net revenues of the project, along with other available funds to be received in respect to the project, would be sufficient in each year to pay the debt service on Pennvest's loan to the Authority. The Department approved the debt proceedings for the exclusion of the Pennvest Guaranty in September 2002.

neous incurrence and exclusion of debt (after subtracting the amount of debt covered by the exclusion) as long as the net result did not leave the net non-electoral debt above the local government's debt limit. In this case, the Department determined that the Borough filed an application for exclusion of the full amount of the expected debt and submitted the Report on Self–Liquidating Debt (a/k/a "the Engineer's Report") with the debt proceedings. Upon the Department's approval of the debt and exclusion, there would not be any increase to the Borough's net non-electoral debt. Based on that decision, the Department determined that Skonieczny failed to raise any genuine issue of material fact.

Regarding her allegation that the Borough did not obtain realistic cost estimates, the Department found that "[e]stablished law grants the Department limited discretion in determining what is 'realistic' with regard to § 8006 of the Debt Act. Administrative and judicial authorities will neither invade nor supplant the legislative competence of the local government unit, absent a showing of fraud or abuse. *Borough of Brentwood v. D.C.A.*, 657 A.2d 1025. Absent well plead [sic] allegations of fraud the Department lacks the ability to inquire beyond the four corners of [the local government unit's debt proceeding] submissions. See *County of Northampton v. Department of Cmty. And Economic Dev.*, 785 A.2d 1082, 1086 (Pa.Cmwlth. 2001)." (Department's February 19, 2004 LGUDA–94 decision at 12a–13a.) The Department then found that the Borough did not need to submit the preliminary cost estimates with its debt proceedings because the Department did not require cost estimates for the stated purpose of the Authority 2003 Bonds which was a refunding project.

As to Skonieczny's allegation that the official action taken by the Mayor of the Borough to sign the ordinance did not take place at a meeting open to the public as required by the Debt Act, the Department, unsure as to whether it even had subject matter jurisdiction to address this alleged violation, found that the Borough Code did not require the Mayor to sign the ordinance during a "public meeting," but only that it be returned during a "regular meeting of council." Because the Mayor signed the ordinance during a regular meeting of the Borough Council on July 23, 2003, the Department dismissed Skonieczny's argument as non-persuasive.

■ Finally, Skonieczny made the following allegations of fraud: the Borough made a fraudulent submission when it submitted a revised debt service schedule with its supplemental materials and when it failed to include the Sky Bank debt in the Engineer's Report; and the Engineer's Report was fraudulent and incomplete. The Department found that these allegations were meritless because: (1) there was no evidence to support allegations of fraudulent intent regarding the submission of a revised debt service schedule, and the Department routinely sent comments regarding errors in debt proceedings to local government units and accepted revised documents; and (2) the Borough's answer indicated that the consulting engineer's projection of revenue within the Engineer's Report contemplated that the Bank Notes would be satisfied prior to payment of any debt service, and this explanation was consistent with the ordinance's stated purpose of the Authority 2003 Bonds. Further, Skonieczny had not pled any specific facts to counter this explanation other than her conjecture that the Borough would not satisfy the Bank Notes as indicated. Last, but not least, in response to Skonieczny's allegation that the Engineer's Report was not in compliance with 53 Pa. C.S. §§ 8025 and 8026 because it failed to

show that the revenues would be sufficient to pay for the operating expenses and debt service when the debt service became due, and it was already due, the Department found that she was misapplying the statute. 53 Pa.C.S. § 8025 applied to only exclusions of self-liquidating debt evidenced by "revenue bonds or notes, and by definition in the Debt Act, guaranties endorsed on an instrument issued by an authority are not bonds or notes. Therefore, this section did not apply. Further, her allegation that the revenues would not be sufficient were also without merit because 53 Pa.C.S. § 8026 stated that, "[t]he estimated net revenues of the project for each year of the remaining life of the bonds, notes or obligations with a computation showing, in reasonable detail, that the net revenues, together with other available funds to be received in respect to the project, will be sufficient in each year to pay the annual debt service, other than capitalized debt service, on the bonds, notes or obligations or a specified aggregate principle amount thereof." The Department found that the estimate of revenues together with other funds received as shown in the Engineer's Report satisfied these requirements. Skonieczny then filed an appeal with this Court from the Department's decision.[3]

## II. Skonieczny's Appeal

■ On appeal, Skonieczny only raises a few of her original contentions. First, she argues that the Department erred in its interpretation of 53 Pa.C.S. § 8022 because that section of the Debt Act does not allow the Borough to simultaneously incur and exclude debt as self liquidating and exceed the statutory debt limits of the Borough. She contends that 53 Pa.C.S. § 8022 only allows simultaneous approval and exclusion of debt already "incurred" as that word is defined under 53 Pa.C.S. § 8002.[4] However, the Department explained that 53 Pa.C.S. § 8022 allows for a simultaneous incurrence and exclusion of debt when the net result, *after subtracting the amount of debt covered by the exclusion,* does not leave the net non-electoral debt above the local government's debt limit. Because this case involves technically complex statutory schemes, we decline to substitute our discretion for the expertise of the Department. *Shawnee Development, Inc. v. Commonwealth,* 799 A.2d 882 (Pa.Cmwlth.2002), *affirmed,* 572 Pa. 665, 819 A.2d 528 (2003).

■ Skonieczny also argues that the Department's decision that the Borough obtained realistic preliminary cost estimates was not supported by substantial

---

**3.** Our scope of review of the Department's decisions is limited to determining whether constitutional rights were violated, errors of law committed, or necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704.

**4.** 53 Pa.C.S. § 8002 defines "incurred" as follows:

When used with respect to debt, means the point in time when, in the case of debt assented to by the electors, the assent has been given, and, in the case of nonelectoral or other debt the first ordinance or in the case of *small borrowings* under section 8109 (relating to small borrowing for capital purposes), the resolution authorizing the

debt has been finally enacted or adopted, unless the authority for the debt has been canceled or terminated as provided in this subpart. Final enactment or adoption means the final act necessary to make an ordinance or resolution, as the case may be, *effective pursuant to all requirements of law,* including any necessary approval by a mayor or other executive officer or failure of action by the mayor or officer within a specified statutory time limit, or passage over the veto of a mayor or of the officer, but does not include any required advertising subsequent to the date of adoption by the governing body of the local governing unit.

evidence. 53 Pa.C.S. § 8006 provides, in relevant part:

**Preliminary cost estimates**

Prior to the initial authorization of bonds or notes or the issuance of any guaranty to finance *any project involving construction* or acquisition, the governing body shall obtain realistic cost estimates through actual bids, option agreements or professional estimates from registered architects, professional engineers or other persons qualified by experience. (Emphasis added.)

However, the Department explained the reason why preliminary cost estimates were not required in this case, stating:

The Borough recognizes that the actual "project" or purpose of the Debt Proceedings is the refunding of a portion of the Bank Notes and funding the capitalized interest, and not the direct costs of the Phase II Sewer System project. A fair reading of § 8006 and § 8007, however, suggests that the word "project" was meant to reference the actual construction or acquisition work and does not contemplate a refunding project. Section § 8006 indicates in relevant part: "Prior to the initial authorization of bonds or notes or the issuance of any guaranty to *finance any project involving construction or acquisition*, the governing body shall obtain realistic cost estimates ..." (emphasis added). Accordingly, the Department does not require cost estimates for the stated purpose of the Authority 2003 Bonds. The Borough in this case was only required to obtain such preliminary cost estimates of the Phase II Sewer System. The Borough has averred and the De-

partment accepts that such estimates were obtained.

(Department's February 19, 2004 LGU-DA–94 decision at 18a–19a.) Relying on the objectives of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921—to ascertain and effectuate the intent of the legislature and give effect to all of the statute's provisions, and when the language of a statute is clear and unambiguous, to read its provisions in accordance with their plain meaning and common usage, the Department's interpretation of this section is a fair reading of its meaning. Here, the Department found that the Borough had provided sufficient preliminary cost estimates of the Phase II Sewer System project. Although Skonieczny disputes that such information was provided, the Department relied upon two affidavits from Borough Council members that they had received realistic cost estimates which were based not only on their own personal knowledge, but also on their review of professional reports. Included within those affidavits was a comprehensive review of the history of the planning and building of the Phase II Sewer System project with explanations of the estimated costs and changes to those estimations based on various factors.[5] Because the 2003 Bonds are not for the purpose of construction but for refunding the Bank Notes and funding the capitalized interest, and because the Department found that there were sufficient cost estimates for the project itself, the Department's decision is supported by substantial evidence.

Skonieczny argues next that the Department erred by failing to hold an evidentia-

---

**5.** Gerald States, the former President of the Borough Council and current Chairman of the Borough Council's Public Utility Committee, explained in his affidavit that estimated costs of the project rose from $33,476,390 (estimated at the time of approval of the Pennvest Ordinance) to $34,646,132.29 as a

result of (1) a landslide on the worksite that caused damage to equipment and work delays; (2) a recalculation of the electrical requirements for the Phase II Project; and (3) the delay in the collection of tapping fees. (Skonieczny's Reproduced Record at Section 18.)

ry hearing because she alleged fraud and there were multiple genuine issues of fact in dispute. More specifically, she contends that she alleged that the Authority defrauded Borough residents by failing to apply the proceeds from the Pennvest Loan to satisfy the Bank Notes as was the stated purpose of that loan. Instead, "the Borough, the Authority and Sky Bank conspired to piggy back on an unrelated 'Trust Indenture' of a fictitiously titled 'First Supplemental Guaranty Agreement' for an unrelated Phase I Sewer Project." (Skonieczny's brief at 51.) As a result, she argues that Borough residents and taxpayers have been damaged in the amount of $11,850,000 that was guaranteed for the 2003 Bonds for the Phase II Sewer Project. She also points out that she provided two exhibits [6] to the Department for review which proved her allegation.

██ When fraudulent conduct is alleged and supported by specific allegations, an evidentiary hearing before the Department is appropriate. *Simonetti v. Department of Community Affairs*, 651 A.2d 626 (Pa. Cmwlth.1994), *petition for allowance of appeal denied*, 540 Pa. 652, 659 A.2d 990 (1995), *overruled in part on other grounds*, *County of Northampton v. Department of Community and Economic Development*, 573 Pa. 401, 825 A.2d 1245 (2003). Even if fraud is not alleged, an evidentiary hearing may be conducted to resolve material factual controversies. *County of Northampton.* While Skonieczny made claims of fraud, the Department did not find that her claims were supported by her allegations or evidence presented and did not find that they warranted an evidentiary hearing stating:

Complainant charges that the Authority defrauded Borough residents by failing to apply the proceeds from a Pennsylvania Infrastructure Investment Authority loan (the "Pennvest Loan") to satisfy the Bank Notes as was the stated purpose of that loan. Complainant fails to cite any evidence in support of her allegation and is refuted by the Borough's averment in its Motion to Dismiss that all of the funds borrowed to date are/were necessary to complete the Phase II Sewer System. The Borough specifically denies that the Authority 2003 Bonds will be used to satisfy the same debt that was to be retired with the Pennvest Loan. The Borough indicates that there are two Bank Notes, a note dated August 23, 2002 in the amount of $12,000,000, and the second dated April 17, 2003, in the amount of $6,000,000. Complainant provides no evidence in support of her allegation that the proceeds of the Pennvest Loan were not applied to the $12,000,000 note as set forth in the agreement between the Borough, the Bank, and Pennvest. Accordingly, the Complainant's unsupported allegation of misappropriation of funds, as denied by the Borough, is not compelling. Moreover, this specific challenge is outside the scope of the Department's review to the extent that it asks the Department to determine whether proceeds from a previous debt proceeding were used as represented to the Department.

(Department's February 19, 2004 LGU-DA–94 decision at 10a–11a.) Even though she continues to argue that there was a

---

**6.** Skonieczny provided the Department with Exhibit F—a June 27, 2002 agreement between Sky Bank and the Borough approving a line of credit for $12,000,000—and Exhibit H—an August 22, 2002 letter from Pennvest to John Salopek, Esquire, consenting to the Borough executing a collateral assignment of the proceeds of Pennvest's commitment to Sky Bank as a short term financing vehicle offered by the Bank to the Borough to interim finance the construction project which is the subject of Pennvest's commitment. Both exhibits were attached to Skonieczny's amended complaint.

misappropriation of funds as evidenced by the exhibits she provided,[7] the Secretary of the Department is the sole fact finder in debt proceedings and may weigh and consider all evidence relevant to the proceedings before him. *Borough of Wilkinsburg v. Department of Community and Economic Development,* 728 A.2d 389 (Pa. Cmwlth.1999). In this case, the Secretary found that the evidence did not support Skonieczny's contention and we will not disturb that finding on appeal.

Skonieczny argues next that the Department erred in determining that the ordinance was lawfully enacted because the Mayor's signature was obtained after the public meeting was adjourned. In fact, she contends that the Mayor took no action during the council meeting on July 23, 2003, because the Mayor was still deciding whether to sign the ordinance even after the meeting adjourned. As such, the ordinance was not returned at a "regular meeting of council" as the Department found. Section 46006 of the Borough Code provides:

> The enactment of an ordinance except as herein otherwise provided shall be the date when the mayor shall approve it or the date of passage by the council over the veto of the mayor, or in the case of an ordinance not returned by the mayor at the regular meeting of council, *occurring at least ten days after the meeting at which such ordinance was passed by the council . . .* (Emphasis added.)

While the Borough Code requires that the ordinance be returned during a "regular meeting of council," the Department found both that the Mayor signed the ordinance during that meeting and even if she did not, the Department did not have subject matter jurisdiction to address such a violation.[8] Our review of the record indicates that the minutes for that meeting show that the Mayor did not sign or return the ordinance at that meeting; rather, only the Council members voted to enact the ordinance. However, the Mayor's failure to sign the ordinance at the meeting was not a fatal defect because nothing in the record indicates that the Mayor vetoed the ordinance, and the ordinance did, in fact, became law within ten days after the meeting. Because Skonieczny did not allege that there was a veto by the Mayor of the ordinance, the Department properly determined that the ordinance was lawfully enacted.

### III. McGuire's Complaint and Appeal

McGuire filed a seven-count complaint alleging, *inter alia,* that there were inaccuracies in the Engineer's Report, and the consulting engineer that drafted the report was incompetent or attempting to defraud the Department. The Borough filed an answer and a motion to dismiss. The De-

---

7. In her brief, Skonieczny argues:
   Moreover, the proof is in the pudding. IF in fact the proceeds of the Pennvest Loan were used to refund the Sky Bank Line of Credit, then this appeal would not be before the Court because there would be no need of the Borough's Guaranty of the 2003 Bond Issue to refund the same Sky Bank Line of Credit. Even without any evidence, common sense alone would dictate that if the Authority did in fact apply the proceeds of the Pennvest Loan to the Sky Bank Line of Credit, then there can only be one logical conclusion, that the Authority fraudulently borrowed an additional $12,000,000.00 from Sky Bank without anyone knowing about it.
   (Skonieczny's brief at 54.)

8. Skonieczny also argues that the Department erred when it failed to address whether various sections of the Debt Act are ambiguous and unconstitutional and whether the Department should have transferred this matter to the proper court of jurisdiction. However, based on how we have determined the various issues in this case, we disagree that any of the disputed sections of the Debt Act are ambiguous or unconstitutional.

partment granted the Borough's motion to dismiss as to all seven counts finding that the material averments of the complaint failed to raise any genuine issues of material fact. More specifically, relevant to the issues in Count II (regarding fraud and the Engineer's Report which are raised on appeal), the Department found the following:

Complainant's averment § 4, as amended by subsequent pleadings, avers that there are inaccuracies in the estimate of revenues in the Engineer's Report and that accordingly, the Debt Proceedings do not comply with § 8026 of the Debt Act. Complainant further challenges that the consulting engineer that drafted the report (the "Consulting Engineer") is incompetent or attempting to defraud the Department . . .

Absent well plead allegations of fraud, the Department lacks the ability to inquire beyond the four corners of the local government unit's debt proceedings. (Citations omitted.) In the instant matter, Complainant fails to plead averments with particularity in support of her allegations of fraud, relying on her opinion that the Consulting Engineer's figures are incorrect and her suspicion that the Consulting Engineer is attempting to conceal the "real" costs of the project.

A pleading of fraud must be done with particularity, and requires specific allegations. (Citations omitted.) The Complainant's averments in the present case fail this standard and do not amount to a serious allegation of fraud that would warrant an evidentiary hearing. (Citations omitted.) Moreover, Complainant failed to submit any documentation from a registered engineer or other qualified professional to support her allegations that the Engineer's Report is inaccurate. As there is not a well plead [sic] allegation of fraud in the instant matter, the Department lacks jurisdiction to address the alleged mistakes in the Engineer's Report.

(Department's February 19, 2004 decision at 10–11.)

On appeal, McGuire contends that the Department abused its discretion by failing to allow her to conduct discovery and by failing to hold an evidentiary hearing on the issues she presented relative to the Borough's fraudulent conduct because the Department re-opened the record to allow the Borough to present additional affidavits and documentary evidence because there was not sufficient evidence of record to establish which portion of the bond issue proceeds would be applied for each stated purpose.

The Department's regulations provide the following regarding proceedings before the Department: if an individual wishes to file a complaint with the Department, pursuant to 12 Pa.Code §§ 11.7(a)(3) and (4), the complaint shall include an identification of the relief sought and the legal basis for the relief, and supporting material may be submitted with the complaint. A respondent filing an answer to a complaint may file a motion to dismiss along with the answer, *see* 12 Pa.Code § 11.11(b), along with supporting affidavits or documents, including additional items of the local government unit. 12 Pa.Code § 11.11(b)(1). The complainant is then given an opportunity to file responsive affidavits or documents. 12 Pa.Code § 11.11(b)(2). It is within the discretion of the Department as to whether a hearing will be held. 12 Pa.Code § 11.12(a). 12 Pa.Code § 11.12(b) continues to provide:

The scope of the hearing may be limited by the presiding officer to specified legal or factual issues presented in the pleadings or a motion. The holding of a hearing may be conditional on the outcome of an initial hearing or oral argument on a *motion to dismiss or other*

*preliminary motion* and a determination thereon by the presiding officer. (Emphasis added.)

If the Department determines that a hearing will be scheduled, a presiding officer is assigned to the matter. Pursuant to 12 Pa.Code § 11.14, it is the presiding officer who receives pleadings and documents; regulates the course, conduct and scope of the hearings and oral arguments; administers oaths; issue subpoenas; rules upon offers of proof and receives evidence; *takes or causes depositions or other discovery to be taken;* disposes of procedural matters, including motions, and allows for the presentation of oral argument. Here, the Department determined that a hearing was not warranted in this case based upon the pleadings, i.e., McGuire's complaint failed to make out a cognizable claim. For that reason, a hearing was not scheduled and there was no presiding officer to allow discovery to be taken.

As to whether McGuire's pleading/complaint sets forth a cognizable claim, a pleading of fraud must be done with particularity and requires specific allegations. *Chatham Racquet Club v. Zimmerman,* 127 Pa.Cmwlth. 209, 561 A.2d 354 (1989), *petition for allowance of appeal denied,* 527 Pa. 604, 589 A.2d 694 (1991). The elements of fraud are the false representation of an existing fact, knowledge, reliance and damage. *Borough of Brentwood v. Department of Community Affairs,* 657 A.2d 1025, 1027 n. 4 (Pa.Cmwlth. 1995), *overruled in part on other grounds by County of Northampton v. Department of Community and Economic Development,* 573 Pa. 401, 825 A.2d 1245 (2003). However, as the Department found, McGuire failed to plead fraud with any particularity in support of her allegations. Instead of alleging specifically the false representation of an existing fact, the Borough's knowledge of that false representation, her reliance on that false representation, and her damages, McGuire, instead, made general allegations that the consulting engineer's figures were incorrect and that he was attempting to conceal the "real" costs of the project. Because McGuire's complaint does not meet the requirements necessary to allege fraud, the Department did not abuse its discretion by disallowing discovery or holding an evidentiary hearing on the allegations in her complaint.

McGuire also argues that the Department erred in finding that the Engineer's Report was immaterial because the Department was required to look at the report to ensure that the debt was self-liquidating. Contrary to McGuire's contention, however, the Department did not find that the Engineer's Report was immaterial; it found that her allegations that the report was inaccurate were not supported by anything other than unfounded allegations. She presented no documentation from any other registered engineer to show that the figures in the report were incorrect. As such, her argument is without merit.

### IV. Baldwin's Complaint and Appeal

Finally, Baldwin filed a one-count complaint alleging that the debt proceedings were invalid because the Borough failed to make available to her a copy of the full proposed text of Ordinance 389 to incur the lease rental debt as required by the Debt Act, 53 Pa. C.S. § 8003(b)(2), the ordinance governing the debt proceedings. The Borough filed an answer and motion to dismiss her complaint.

The Department dismissed Baldwin's complaint finding that the Debt Act did not require the Borough to send a copy of the ordinance to individual requesters, but only that a copy of the full text of the ordinance was to be made available at the hours and location as stated in its advertisement pursuant to 53 Pa.C.S. § 8003(a).

Because an affidavit submitted by the Borough averred that the full text of the ordinance authorizing the incurrence of lease rental debt was available for examination by any citizen at the address and time detailed in the advertisement, and because the complaint did not argue that the ordinance was not available at the location cited in the advertisement, the complaint failed to state a legal basis for which relief could be granted. Baldwin then filed an appeal with this Court.

Baldwin contends that the Department's decision should be reversed because Ordinance 389 was not lawfully enacted. More specifically, she contends that the Borough failed to provide her with the full text of the ordinance as proposed and advertised as required under the Debt Act. The crux of Baldwin's argument is that she requested that the Borough fax a copy of the entire ordinance to her, and it only faxed her 11 of the 16 pages of the document. However, as the Department properly found, the Debt Act does not mandate the Borough to send copies of the ordinance to individual citizens upon request. All that the Debt Act requires is that:

> [A]n ordinance required to be adopted by this subpart shall be advertised not less than three nor more than 30 days prior to its enactment. The advertisement shall appear once in a newspaper of general circulation in the area of the local government unit, shall set forth a summary of the contents of the ordinance and shall state that *a copy of the full proposed text thereof may be examined by any citizen in the office of the secretary of the local government unit at the address and during the reasonable hours* stated in the advertisement. (Emphasis added.)

Because the Debt Act does not mandate that the Borough provide Baldwin with a copy of the ordinance, Baldwin's argument that the ordinance was not lawfully enacted is without merit. For this same reason, Baldwin's contention that the Department erred by failing to conduct an evidentiary hearing on this disputed issue is also without merit.

Accordingly, the orders of the Department are affirmed.

### ORDER

AND NOW, this *20th* day of *July,* 2004, the orders of the Department of Community and Economic Development dated February 19, 2004, at LGUDA 94 (Skonieczny), LGUDA 95 (McGuire), and LGUDA 97 (Baldwin), are affirmed.