**Robert DeHART and Raymond Ziomek, Inmates of General Population at State Correctional Institution at Greene, Petitioners,**

v.

**Martin F. HORN, Commissioner of the Department of Corrections of Pennsylvania, James S. Price, Superintendent State Correctional Institution at Greene, Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 4, 1997.

Decided May 22, 1997.

Robert DeHart, pro se, for petitioners.

Victoria S. Freimuth, Assistant Counsel, Camp Hill, for respondents.

Before PELLEGRINI and LEADBETTER, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Before us are the preliminary objections of the Respondents, Martin F. Horn, Commissioner of the Department of Corrections of Pennsylvania, and James S. Price, Superintendent State Correctional Institution at Greene, to an action in mandamus filed by the Petitioners, Robert Dehart and Raymond Ziomek, inmates of general population at the State Correctional Institution at Greene (SCI–Greene), to compel the Respondents to provide them with at least two hours of daily, outdoor, physical exercise as mandated by Section 1 of the Act of June 14, 1923, P.L. 775, 61 P.S. § 101(Act).[1]

When ruling on preliminary objections, this Court shall sustain such objections and dismiss the action only in cases that are clear and free from doubt that the law will not permit recovery.[2] *Stone and Edwards Insurance Agency, Inc., v. Department of Insurance*, 151 Pa.Cmwlth. 266, 616 A.2d 1060 (1992). The preliminary objections, herein, are all in the nature of a demurrer.[3] We therefore must accept as true all well-pleaded allegations and all inferences reasonable deduced therefrom. *Pennsylvania Chiropractic Federation v. Foster*, 136 Pa. Cmwlth. 465, 583 A.2d 844 (1990).

Petitioners, pro se, filed an amended petition for review[4] which contained fifty, inart-

1. Section 1 of the Act provides that:
   [e]very warden, board of prison managers, prison inspectors, or any other person in authority, in charge of any prison or penitentiary, who may or shall have in charge any person confined therein whether such person be a tried or an untried prisoner, shall provide that such person shall have at least two hours daily, physical exercise in the open, weather permitting, and upon such days on which the weather is inclement, such person shall have two hours, daily, of physical exercise indoors of such prison or penitentiary: Provided, however, The (sic) same is safe and practical, and the judges of the several courts are to be the judges thereof. Prisoners in segregation or disciplinary status shall receive a minimum of at least one hour of daily exercise five days per week.
   61 P.S. § 101.

2. As we analyze the merits of the preliminary objections before us, we keep in mind that mandamus is an extraordinary remedy which is available only after a showing of a clear legal right thereto, along with a corresponding duty on the part of the respondents, and that there is no other adequate remedy. *Equitable Gas Company v. City of Pittsburgh*, 507 Pa. 53, 488 A.2d 270 (1985); *Inmates of B–Block v. Jeffes*, 79 Pa. Cmwlth. 275, 470 A.2d 176 (1983), *affirmed*, 504 Pa. 509, 475 A.2d 743 (1984).

3. A demurrer will not be sustained unless the face of the pleadings shows that the law will not permit recovery, and any doubts should be resolved against sustaining the demurrer. *Gaster v. Township of Nether Providence*, 124 Pa. Cmwlth. 595, 556 A.2d 947 (1989).

4. The Petitioners originally filed a "petition for a writ of mandamus" on November 11, 1996. The Petitioners subsequently filed an "amended petition for review" on January 2, 1997 to which the preliminary objections of the Respondents are addressed. *See* Section 761 of the Judicial Code, 42 Pa.C.S. § 761; *Inmates of B–Block v. Marks*, 61 Pa.Cmwlth. 421, 434 A.2d 211 (1981) (manda-

fully pleaded, paragraphs which are summarized as follows. SCI–Greene has an outdoor exercise yard which is surrounded by a security fence. The existing exercise schedule ensured that all inmates in the general population received their entitlement to two hours of daily, outdoor, physical exercise as mandated by Section 1 of the Act, 61 P.S. § 101. On September 30, 1996, the exercise yard was closed, Mondays through Fridays, for approximately one month to allow for the construction of a fence which bisected the exercise yard into two smaller halves; the exercise yard continued to be open to the inmates on Saturdays and Sundays. The inmates were not afforded exercise opportunities when the exercise yard was closed due to the fence being built therein. In early November of 1996, construction of the fence was completed thereby ending the weekday closures of the exercise yard.

▆▆▆ The Petitioners assert that the Respondents deprived them of all outdoor exercise while the exercise yard was closed during construction of the fence. In response thereto, the Respondents filed a preliminary objection on the basis that the issue is now moot since the Petitioners are not being currently subjected to the allegedly adverse prison condition of which they complain.[5] We agree.[6] Upon completion of the fence construction, the exercise yard was reopened

and a new schedule was implemented under which the inmates received outdoor daily exercise in the morning from 8:15 to 10:15 or in the afternoon from 1:00 to 3:00. The Petitioners, by virtue of their own allegations, concede that, with the reopening of the exercise yard, the issue of whether the closure of the exercise yard, during the construction of the fence, constituted a deprivation of their entitlement to receive two hours of daily, outdoor, physical exercise is moot.[7]

▆▆▆ Petitioners also assert that, as a result of the exercise yard being partially closed during the construction of the fence, they were subjected to "considerable physical and mental pain" which caused their Eighth Amendment right against cruel and unusual punishment, as applicable to the States through the Fourteenth Amendment, to be violated. For conditions of confinement to violate the Eighth Amendment prohibition against cruel and unusual punishment, the United States Supreme Court has said these conditions must be totally without penological justification and deprive an inmate of the minimal civilized measure of life's necessities. *Rhodes v. Chapman*, 452 U.S. 337, 346–347, 101 S.Ct. 2392, 2398–2400, 69 L.Ed.2d 59 (1981); *Gregg v. Georgia*, 428 U.S. 153, 183, 96 S.Ct. 2909, 2929–30, 49 L.Ed.2d 859 (1976).[8]

---

mus action is a proper vehicle for the review of Section 1 of the Act, 61 P.S. § 101).

5. The Petitioners also assert that upon the reopening of the exercise yard, and continuing to the present, they only receive approximately one hour and forty-five minutes out-of-cell exercise time. The Petitioners allege that the Respondents systematically deprive them of their entitlement to two hours of "meaningful" daily exercise and that the deprivation occurs in the following forms: 1) the time it takes to transport the inmates from their cells to the exercise yard, upwards of ten minutes, is deducted from the time allocated for the scheduled exercise periods, 2) accommodations are not made to compensate for scheduling conflicts which result in the inmates not being able to attend their regularly scheduled exercise period, and 3) scheduled exercise periods are canceled, without alternative exercise arrangements being made, when the number of inmates who gather for the exercise period fails to meet the requisite number for yard participation. In response thereto, we note that there is no requirement, statutory or otherwise, that

the inmates are entitled to two hours of "meaningful" daily exercise.

6. The Petitioners fail to argue that the aforesaid issue falls under one of the general exceptions to the mootness doctrine. *See Chester Upland School District v. Chester Upland Education Association*, 64 Pa.Cmwlth. 523, 440 A.2d 1283 (1982) (a case will not be dismissed on the basis of mootness if issues involved are of important public interest, of a recurring nature, and capable of repeatedly avoiding review).

7. The Respondents also filed a preliminary objection on the basis that the aforesaid allegations of the Petitioners fail to state a claim entitling them to relief; however, having determined that the underlying controversy no longer exists, we need not address this particular preliminary objection.

8. The Eighth Amendment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Rhodes*, 452 U.S. at 346, 101 S.Ct. at 2399, quoting *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958).

The Petitioners merely allege that there was no necessity to close the exercise yard. In so doing, however, the Petitioners fail to identify a single fact upon which this Court can infer that the closing of the exercise yard was totally without penological justification. Furthermore, the denial of recreation for a short period of time is not a per se constitutional violation. *See Rust v. Grammer,* 858 F.2d 411, 414 (8th Cir.1988) (suspension of yard privileges for thirteen days during lockdown does not violate Eighth Amendment); *Leonard v. Norris,* 797 F.2d 683, 685 (8th Cir.1986) (no out-of-cell exercise for fifteen days in punitive confinement not unconstitutional). The exercise yard was closed on weekdays only and the construction in its entirety lasted approximately one month. The alleged deprivation occurred in five day increments, Monday through Friday, with two days of exercise between each period of inactivity. Given the temporary nature of the deprivation and the deference afforded prison officials in maintaining the internal security of their institutions [9], we agree that the Petitioners have failed to state a claim of cruel and unusual punishment.

Accordingly, we will sustain the preliminary objections of the Respondents and dismiss, with prejudice, the Petitioners' amended petition for review.

### ORDER

AND NOW, this 22nd day of May, 1997, the preliminary objections of Martin F. Horn and James S. Price are sustained and the amended petition for review of Robert DeHart and Raymond Ziomek is dismissed with prejudice.

---

9. It is well-established that prison administrators must be afforded wide-ranging deference in adopting and carrying out policies that in their reasonable judgment are necessary to preserve order, discipline, and security. *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979); *Peterkin v. Jeffes,* 855 F.2d 1021, 1032 (3rd Cir.1988).