**Dom GIORDANO, Petitioner,**

v.

**Tom RIDGE, Governor, Commonwealth of Pennsylvania and Commonwealth of Pennsylvania and Mike Fisher, Attorney General, Commonwealth of Pennsylvania and City of Philadelphia and City of Pittsburgh, Respondents.**

Commonwealth Court of Pennsylvania.

Argued May 19, 1999.

Decided Aug. 31, 1999.

Philip J. Berg, Lafayette Hill, for petitioner.

Gregory R. Neuhauser, Senior Deputy AG, Harrisburg, for respondents.

Before COLINS, President Judge, and DOYLE, J., SMITH, J., PELLEGRINI, J., FRIEDMAN, J., FLAHERTY, J., and LEADBETTER, J.

COLINS, President Judge.

On February 12, 1999, Dom Giordano (Taxpayer) filed a petition for review in the nature of an action seeking declaratory and injunctive relief invoking this court's original jurisdiction. Presently before this court for disposition are the preliminary objections of Tom Ridge, Governor of the Commonwealth of Pennsylvania, Mike Fisher, Attorney General of the Commonwealth of Pennsylvania, the Commonwealth of Pennsylvania, and the Cities of Philadelphia and Pittsburgh (collectively, Respondents).

The pertinent facts of this case, as pleaded in Taxpayer's petition, are as follows. On February 9, 1999, the Governor signed into law The Capital Facilities Debt Enabling Act, Act of February 9, 1999, P.L. 1, 72 P.S. §§ 3919.101–3919.5102 (Act 1 or Act).[1] Act 1 authorizes, and provides procedures for, application to the Commonwealth by municipalities and municipal

authorities for state funding of certain capital projects. The Act authorizes the undertaking of debt by the Commonwealth's issuance of general obligation bonds for the purpose of making grants to local authorities for the construction, repair, renovation, improvement, or equipment of qualifying capital projects.

Chapter 5 of the Act, which addresses sports facilities financing, provides for grants of Commonwealth funds to a municipality or authority for the purpose of constructing or renovating a qualifying sports facility upon application by the municipality or authority and approval by the Office of the Budget of the Commonwealth. The grants contemplated under Act 1 are made to the contracting municipality or authority under Section 502 of Act, and not directly to the tenant/professional sports organization. Furthermore, tenants are required to comply with certain certifications and conditions under Section 504 of the Act. These include such conditions as an agreement by the tenant leasing the facility to remain in the facility for a specified period of time; an agreement that, if the tenant sells or transfers its sports franchise, the transferee is to be bound by the same conditions as the transferor; an agreement that any costs of design and construction that are due to delays or overruns are the responsibility of the municipality, authority or tenant; an agreement that either the municipality or tenant is responsible for capital improvements, security, maintenance, and utilities at the facility; an agreement to set aside a certain number of days for the use of the facility by the municipality and the Commonwealth; and an agreement that the tenant is to make an additional rental payment of $25 million after the first ten-year period of occupancy, which payment may be reduced by certain tax credits.[2]

1. Act 1 is a reenactment and continuation of Article XVI–B of the law known as the Fiscal Code, Act of April 9, 1929, P.L. 343, as amended, formerly found at 72 P.S. §§ 1601–B–1616.2

2. Tax credits would be calculated by a mathematical formula that, simply stated, is based on the increased tax revenue generated by the facility. Should the facility produce sufficient tax revenue, as calculated by the formula, this

▇ Taxpayer filed a petition for review claiming that Act 1 violates Article VIII of the Constitution of Pennsylvania by unconstitutionally incurring debt on behalf of the state and/or by pledging the credit of the Commonwealth to an individual, company, corporation, or association.[3] The petition for review requests that this Court issue a declaratory judgment finding Act 1 unconstitutional and permanently enjoin Respondents from disbursing any funds under Act 1. In response to Taxpayer's petition, Respondents filed preliminary objections in the nature of a demurrer alleging that Taxpayer has failed to state a claim sufficient to permit an award of the relief requested.[4]

▇ Initially, we note that in ruling on preliminary objections, in the nature of a demurrer, the Court accepts as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom. *Envirotest Partners v. Department of Transportation*, 664 A.2d 208 (Pa.Cmwlth.1995). The court need not accept as true conclusions of law, unwarranted inferences from the facts, argumentative allegations, or expressions of opinion. *Id.* A demurrer will not be sustained unless the face of the pleadings shows that the law will not permit recovery, and any doubts should be resolved against sustaining the demurrer. *DeHart v. Horn*, 694 A.2d 16 (Pa.Cmwlth. 1997). Additionally, an Act of the general

assembly may be declared unconstitutional only where it clearly, palpably, and plainly violates the Constitution. *Consumer Party of Pennsylvania v. Commonwealth*, 510 Pa. 158, 507 A.2d 323 (1986). It is axiomatic that Acts of the General Assembly enjoy a strong presumption of constitutionality. *Id.* With these standards in mind, we consider Respondents' preliminary objections.

▇ Article VIII, Section 8 of the Pennsylvania Constitution provides,

The credit of the Commonwealth shall not be pledged or loaned to any individual, company, corporation or association nor shall the commonwealth become a joint owner or stockholder in any company, corporation or association.

Our Supreme Court discussed the intent of Article VIII, Section 8 in *Tosto v. Pennsylvania Nursing Home Loan Agency*, 460 Pa. 1, 331 A.2d 198 (1975). The Court observed that Article VIII, Section 8 was adopted in 1857 in reaction to, and with the specific purpose of, eliminating the type of speculative financing by the Commonwealth that had become prevalent in the mid-nineteenth century in an effort to aid the growth of the railroads. The Court stated, "[t]he term 'pledge or loan of credit' is a term of art referring to these financing devices and was clearly not intended to prohibit other sorts of financial transactions between the Commonwealth and private citizens or corporations...."

---

revenue would operate as a credit against the additional rental payment with the strong potential to reduce it to zero. Therefore, the additional payment would be made only in the event that the facility fails to generate tax revenue sufficient to produce the credit.

3. Along with the petition for review, Taxpayer filed a motion for preliminary injunction and a motion for *ex parte* preliminary injunction, which was treated by this court as a request for a special injunction without notice, and denied on February 12, 1999. Following a hearing on February 25, 1999, this Court also denied Taxpayer's motion for preliminary injunction. Taxpayer appealed the denial of the preliminary injunction to the Supreme Court and petitioned that Court for an injunction

pending appeal. On March 26, 1999, the Supreme Court denied the request for an injunction pending appeal and directed that the appellate briefs be filed on April 9, 1999.

4. The role of the trial court in ruling on preliminary objections in the nature of a demurrer is to determine whether or not the facts pleaded are legally sufficient to permit the action to continue. Where, as here, there is no factual dispute in the case, only a dispute over the interpretation of the Constitution, it is the appropriate juncture for the court to interpret the pertinent provisions of the Pennsylvania Constitution and determine the merits of Taxpayer's claim. *Firing v. Kephart*, 466 Pa. 560, 353 A.2d 833 (1976).

*Id.* at 15–16, 331 A.2d at 205. Additionally, our Supreme Court has held that this language does not prohibit loans from the Commonwealth to a municipal authority, even where the ultimate beneficiary of such loan may be a private entity. *Basehore v. Hampden Industrial Development Authority,* 433 Pa. 40, 248 A.2d 212 (1968). In *Basehore,* taxpayers challenged the Industrial Development Authority Law[5] on several grounds, including an allegation that the law violated Article VIII, Section 8.[6] Justice Jones, writing for a three-justice plurality of the Supreme Court, concluded,

> The money ... will go to the Authorities and not to the industrial corporations; the Authorities will own the factories; the corporations will lease the plants from the Authorities. Therefore, if credit is being lent to anyone, it is being lent to the Authorities. On several occasions we have held that authorities similar to the Industrial Development Authorities involved in this case were not individuals, companies, corporations or associations within the meaning of [Article VIII, Section 8]. See: *Bernstein v. City of Pittsburgh,* 366 Pa. 200, 210, 77 A.2d 452 (1951); *McSorley v. Fitzgerald,* 359 Pa. 264, 271, 59 A.2d 142 (1948); *Belovsky v. Redevelopment Authority of City of Philadelphia,* 357 Pa. 329, 345, 54 A.2d 277, 172 A.L.R. 953 (1947); *Williams v. Samuel,* 332 Pa. 265, 275, 2 A.2d 834 (1938); *Tranter v. Allegheny County Authority,* 316 Pa. 65, 81, 173 A. 289 (1934).

433 Pa. at 59, 248 A.2d at 222.

Under Act 1, as in *Basehore,* the money flows from the Commonwealth to a municipality or municipal authority and not directly to the private entity. Therefore, even assuming the credit of the Commonwealth were being pledged or loaned within the meaning of Article VIII, Section 8, it is to a municipality or authority and not to any "individual, company, corporation or association."

Given our Supreme Court's pronouncements interpreting Article VIII and the type of financing proscribed by Act 1, we agree that Taxpayer has failed to state a claim of unconstitutional incursion of debt or pledging of the credit of the Commonwealth.

Accordingly, Respondents' preliminary objections in the nature of a demurrer are sustained. Taxpayer's petition for review fails to state a cause of action upon which the requested relief may be granted. Taxpayer's petition for review in the nature of a complaint for declaratory judgment and injunctive relief is dismissed with prejudice.

### ORDER

AND NOW, this 31st day of August, 1999, Respondents' preliminary objections in the nature of a demurrer are sustained. Taxpayer's petition for review fails to state a cause of action upon which the requested relief may be granted. Taxpayer's petition for review in the nature of a complaint for declaratory judgment and injunctive relief is dismissed with prejudice.

Judge McGINLEY did not participate in the decision in this case.

SMITH, J., dissents.

I dissent from the majority decision to grant Respondents' preliminary objections to Petitioner's petition for review in the nature of a complaint for declaratory judgment. Petitioner has stated a clear cause of action in his case which challenges the constitutionality of the Capital Facilities

---

5. Act of August 23, 1967, P.L. 251, *as amended,* 73 P.S. §§ 371–386. A 1971 amendment changed the title of the law to the "Industrial and Commercial Development Authority Law."

6. Article VIII, Section 8 was renumbered in 1967 and 1968. Although the section had already been renumbered by the time the *Basehore* opinion was filed, the opinion refers to the section under its prior designation as Article IX, Section 6.

Debt Enabling Act (Act 1).[1] The majority correctly notes the case law of this Commonwealth that an act of the general assembly may be declared unconstitutional only where it clearly, plainly and palpably violates the Constitution, citing *Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 507 A.2d 323 (1986), but it fails to thoroughly examine one of the most fundamental of precepts, *viz.,* that the Commonwealth shall not incur debt on behalf of the state and/or pledge the credit of the Commonwealth to an individual, company, corporation or association or any other entity unless it is for a *public purpose.* Article VIII, § 8, Pa. Constitution.

The majority and Respondents emphasize that the funds generated from the Commonwealth's incurring debt to fund new sports stadiums are to be made available to a contracting municipality or authority rather than to an individual, company, corporation or association, but they ignore the undisputed fact that the pass-through is for the sole benefit of private sports organizations which operate for private, profit-making purposes. These organizations do not perform a public or governmental function; rather they operate to attract a targeted group of people—sports patrons and enthusiasts—to attend paid football, baseball or other sporting events for the personal and private social enjoyment of the patrons.

In *Tosto v. Pennsylvania Nursing Home Loan Agency,* 460 Pa. 1, 331 A.2d 198 (1975), a case of first impression involving the application of Article VIII, § 8 to the sale of general obligation bonds backed by the credit of the Commonwealth as here, the Supreme Court stated that "pledge or loan of credit" is a term of art that did not prohibit various sorts of financial transactions between the Commonwealth and private citizens or corporations that serve a *public purpose and are other-wise lawful.* In *Tosto* the Legislature submitted to the voters the question of whether the Commonwealth should incur debt to make loans available for the repair, reconstruction and rehabilitation of nursing homes in the Commonwealth to meet health and safety standards. The voters approved the plan in 1974, and the Supreme Court rejected all challenges to the constitutionality of the former Nursing Home Loan Agency Law[2] as it was enacted for a proper public purpose. The court held that the presumption of constitutionality of the challenged legislation was strengthened by the fact that the voters had approved the loan program by referendum in 1974. In the present case, the stadium funding plan was never submitted to the voters for their approval.

Black's Law Dictionary 1231 (6th ed.1990) defines *public purpose* in relevant part as follows:

> The term is synonymous with governmental purpose. [T]he essential requisite [is] that a public service or use shall affect the inhabitants as a community, and not merely as individuals. A public purpose or public business has for its objective the promotion of public health, safety, morals, general welfare, security, prosperity, and contentment of all the inhabitants or residents within a given political division, as, for example, a state, the sovereign powers of which are exercised to promote such public purpose or public business.

Thus the threshold question to be resolved in determining whether Petitioner has stated a cause of action is whether the contemplated sports stadium funding promotes the health, safety, morals, general welfare, security, prosperity and contentment of all of the citizens and residents of the Commonwealth or of the municipalities in which the new stadiums are to be constructed.

---

1. Act of February 9, 1999, P.L. 1, 72 P.S. §§ 3919.101–3919.5102.

2. Act of July 22, 1974, P.L. 610, *as amended, formerly* 62 P.S. §§ 1521.101–1521.305, repealed by Section 9(a) of the Act of February 23, 1996, P.L. 27.

Relying on President Judge Colins' memorandum opinion denying Petitioner's motion for preliminary injunction and the Supreme Court's decision in *Basehore v. Hampden Industrial Development Authority*, 433 Pa. 40, 248 A.2d 212 (1968), Respondents argue that even though the professional sports organizations for whom the legislation was enacted will be the primary beneficiaries, that fact does not render it unconstitutional. They correctly maintain that the Legislature may address an economic problem to benefit the public, but it may do so, however, only where the challenged legislation confers a public benefit and promotes a *public purpose*. Respondents further assert that because Act 1 authorizes grants with conditions to municipalities and authorities as opposed to grants to an individual, company, corporation or association and addresses "construction and renovation of certain public facilities," its constitutionality is presumed. Moreover, the majority evidently relies in part upon certain specified conditions attached to the funding to conclude that Act 1 is constitutional.[3]

Nowhere in the majority opinion nor in Respondents' brief is there any persuasive argument or case authority for the presumption or proposition that the planned public funding for the construction or renovation of sports stadiums for professional sports organizations serves a *public purpose* and is otherwise lawful. The sports organizations benefited by Act 1 are solely owned by private interests, although that fact alone is not dispositive; the alleged economic development to flow from the new construction is speculative; the alleged impact on unemployment is speculative as opposed to the clearly stated employment projections in *Basehore;* the

long-term jobs, if any, which may be created for the communities at large surrounding the new stadiums would be seasonal and in all probability low-level; and the Court may take judicial notice of the fact that many of the sports players who contract with the professional sports organizations earn multi-millions in annual salary. (The dissent notes the 1999 Philadelphia Eagles' $55 million 7–year contract with a recent first-round draft pick.) These factors raise genuine and fundamental questions as to the public benefit and *public purpose* behind the enactment of Act 1.

The legislation at issue in *Basehore*, originally titled the Industrial Development Authority Law,[4] represented a legislative effort to resolve serious unemployment problems in parts of the Commonwealth. The Supreme Court noted the express principle behind creation of the industrial development projects: to encourage private manufacturing in the state with the resulting increase in employment and the development of new jobs, a public purpose enforced within the police powers of the Commonwealth. The legislative findings were that unemployment was a serious problem and that industrial development projects represented an effective tool to combat that problem. Notably, Justice Roberts emphasized in his concurring opinion in *Basehore*

> [A]lthough the immediate beneficiary is intended to be the industrial lessee, it acts solely as a conduit by which the public may realize the ultimate benefit of local economic growth. Here, ... the totality of the projects will be devoted to their stated purpose – the reduction of unemployment through the creation of

this venture to one of governmental proportions for the benefit of the general public.

3. The conditions include, among other things, setting aside an unspecified number of days for the municipality or the Commonwealth to use the new or renovated facilities contemplated by Act 1 and requiring the private sports organizations to make rental payments of $25 million after the first ten-year period of occupancy (possibly reduced to zero by available credits). These conditions do not elevate

4. Act of August 23, 1967, P.L. 1609, *as amended,* 73 P.S. §§ 371–386, retitled the Economic Development Financing Law by Section 1 of the Act of December 17, 1993, P.L. 490.

new plant development. While private interests are necessarily aided, the purpose of this aid is to foster a vital public interest.

*Id.*, 433 Pa. at 66–67, 248 A.2d at 225.

The legislative intent behind Act 1 does not represent the type of public benefit or *public purpose* contemplated by Article VIII. Respondents' analogy to the state's raising nursing home health and safety standards to protect nursing home residents or acting within its police powers to develop jobs to address serious unemployment problems may not, without more, transform funding for private sports stadiums to the level of governmental or *public purpose* necessary to confer constitutionality upon the challenged legislation. The Court therefore should not sustain Respondents' demurrer in the face of this record, and any doubts about the merits should be resolved in Petitioner's favor. *DeHart v. Horn*, 694 A.2d 16 (Pa.Cmwlth. 1997). Hence, Respondents' preliminary objections should be denied, and Petitioner should be permitted to proceed with his declaratory judgment action.

Judge DOYLE joins in this dissenting opinion.