# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| Seguro Medico, LLC and Arthur Wayne Walsh, | : | |
| Petitioners | : | |
| | : | |
| v. | : | No. 293 M.D. 2023 |
| | : | Argued: December 4, 2023 |
| Michael Humphreys, in his official capacity as Acting Commissioner of the Pennsylvania Department of Insurance, David Buono, in his official capacity as Acting Deputy Insurance Commissioner, Michael Fissel, in his official capacity as the Chief of the Department of Insurance Field Investigations/Enforcement Bureau, and the Commonwealth of Pennsylvania Department of Insurance, | : | |
| Respondents | : | |

**BEFORE:** HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE ELLEN CEISLER, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**          **FILED: January 3, 2024**

Presently before this Court in our original jurisdiction are the preliminary objections (POs) of Michael Humphreys, in his official capacity as Acting Commissioner of the Pennsylvania Insurance Department (Department),[1] David

---

[1] Humphreys was confirmed as Insurance Commissioner on June 27, 2023.

Buono, in his official capacity as Acting Deputy Insurance Commissioner, Michael Fissel (Fissel), in his official capacity as the Chief of the Department's Field Investigations/Enforcement Bureau, and the Department (collectively, Respondents) to Seguro Medico, LLC (Seguro) and Arthur Walsh's (Walsh) (collectively, Petitioners) petition for review (Petition) seeking a writ of mandamus and declaratory relief.

This case centers on whether Respondents acted unlawfully and fraudulently in their negotiations surrounding two consent orders (the Orders), one between the Department and Walsh, and the other between the Department and Seguro, which resulted in their insurance licenses being surrendered, as well as the later alleged breach of agreements made during the negotiations. The parties having briefed their respective positions, the POs are ripe for our disposition.[2]

## I. BACKGROUND

The Petition, filed June 26, 2023, alleges as follows.[3] Seguro is an insurance brokerage company. (Petition ¶ 27.) Walsh is licensed to sell insurance in various states and is part-owner of Seguro. (*Id.* ¶ 28.) On October 3, 2022, Fissell personally served three proposed consent orders, one concerning Seguro, one concerning Walsh, and one concerning Seguro employee Jesus Barrera (Barrera). (*Id.* ¶ 26.)

---

[2] This Court held a hearing on Petitioners' request for emergency relief on August 29, 2023, and denied a preliminary injunction by memorandum opinion and order dated October 2, 2023. *Seguro Medico, LLC v. Humphreys* (Pa. Cmwlth., No. 293 M.D. 2023, filed October 2, 2023).

[3] When ruling on a demurrer, this Court must accept as true all well-pleaded allegations in the petition for review, including any inferences we can deduce from those allegations, but we need not accept any legal conclusions, unwarranted inferences, argumentative allegations, or opinions. *Giordano v. Ridge*, 737 A.2d 350, 352 (Pa. Cmwlth. 1999). Where documents or exhibits are attached to a petition for review, we may consider them; we need not accept as true any allegations in the petition for review which conflict with the documents or exhibits. *Allen v. Dep't of Corr.*, 103 A.3d 365, 369 (Pa. Cmwlth. 2014). If there is any doubt as to whether the law permits recovery, we resolve it in favor of overruling the demurrer. *Id.*

2

The Seguro Order begins with an acknowledgment of its rights under the Administrative Agency Law[4] and its waiver of the right to a hearing. (Petition at Pennsylvania Order Seguro Medico.) The Order contains a Findings of Fact Section, in which the Department found, *inter alia*, that Seguro provided its employees with sales scripts containing false information. (*Id.* ¶ 3(d)-(i).) The Department found that Seguro had used those scripts to sell to customers and that Seguro employees identified themselves as an entity other than Seguro when answering calls. (*Id.* ¶ 3(j)-(k).) Moreover, it found that Seguro had allowed more than 5,000 applications for insurance to be submitted under Walsh's name when he was not licensed by the Department, along with several other misrepresentations regarding the identity of the employee submitting other applications. (*Id.* ¶ 3(*l*)-(o).) Finally, it found that the Nevada Department of Insurance had investigated Seguro, and in the course of that investigation, Seguro provided a false statement and forged a signature. (*Id.* ¶ 3(p).) Based on those facts, the Department concluded that Seguro had violated several provisions of The Insurance Department Act of 1921[5] related to licensing[6] and provisions of the Unfair Insurance Practices Act[7] prohibiting unfair and deceptive acts.[8] The Order contained language that it was to be "the entire agreement of the parties" and that it could not be "amended or modified except by an amended

---

[4] 2 Pa.C.S. §§ 501-508, 701-704.

[5] Act of May 17, 1921, P.L. 789, *as amended*, 40 P.S. §§ 22-326.7.

[6] Specifically, the Order found Seguro in violation of Section 611-A(2), (6), (7), (11), (17), and (20) of the Insurance Department Act of 1921, 40 P.S. § 310.11(2), (6), (7), (11), (17), (20). Section 611-A was added by Section 2 of the Act of December 6, 2002, P.L. 1183.

[7] Act of July 22, 1974, P.L. 589, *as amended*, 40 P.S. §§ 1171.1-1171.15.

[8] Both Orders found violations of Sections 4 and 5 of the Unfair Insurance Practices Act, 40 P.S. §§ 1171.4-1171.5.

3

order signed by all the parties [].￼" (*Id.* ¶ 10.)[9] The Order required Seguro, *inter alia*, to surrender its licenses to do business in the Commonwealth. (*Id.* ¶ 5(b).) The Walsh Order, which was almost identical to the Seguro order, except not finding Walsh in violation of Section 611-A(17) of the Insurance Department Act of 1921, 40 P.S. § 310.11(17), indicated that "[a]ll licenses . . . to do the business of insurance are hereby surrendered." (*Id.* ¶ 5(b).)

Petitioners, through their former counsel Eric Reed, contested the proposed findings of fact appearing in the Orders. (*Id*. ¶ 32.) Moreover, Reed specifically challenged the appropriateness of Barrera entering a consent order and contested identifying Barrera as a "Qualifying Active Officer." (*Id.* ¶ 33.) Petitioners allege Fissell and Reed arrived at an express agreement that (i) the Department would not pursue a consent order against Barrera, and (ii) the Department would issue a clearance letter to Barrera, allowing him to pursue licensure in another state. (*Id.* ¶¶ 6, 30, 32, 34.)[10] This express agreement, according to Petitioners, further provided that Barrera would voluntarily surrender his Pennsylvania license after he received a clearance letter and out-of-state licensure. (*Id.*) These negotiations are purportedly memorialized in an email from Fissell to Reed, which states that Fissell had "spoke[n] to the individuals on [his] end and it appears they would be ok [sic] with allowing [] Barrera to simply surrender his PA license via our license surrender process and not have a [consent order] issued. The other two [Orders] would remain but can be adjusted to Surrenders." (*Id.* ¶ 35; Ex. 3 (Reed Affidavit (Aff.)) Ex. A.)

---

[9] Fissell testified against Petitioners as a part of a Delaware insurance proceeding and did not mention the underlying Barrera agreement and indicated that the Orders "accurately reflect[ed] the agreement between the parties." (Petition ¶¶ 57-58.)

[10] To the extent this allegation is a legal conclusion, we need not accept it as true. *Giordano*, 737 A.2d at 352.

After negotiating away the proposed consent order against Barrera, the parties worked on the Walsh and Seguro Orders. (*Id.* ¶ 38.) On October 31, 2022, Reed emailed the executed Walsh and Seguro Orders to Fissell and explained that "***Barrera will submit a voluntary surrender once he has been licensed in another state. I will calendar 30 days (Nov. 30) for that follow up***." (*Id.* ¶ 39, (Reed Aff. Ex. B.) (emphasis in original).) Petitioners aver that Fissel did not dispute this. (*Id.* ¶ 40.) On November 22, 2022, Barrera mailed a Letter of Clearance Request Form along with the $25 fee to initiate the voluntary surrender process. (*Id.* ¶ 42.)

The Department did not issue a clearance letter to Barrera, he has been unable to obtain an out-of-state license, and the Department has issued a proposed consent order against him. (*Id.* ¶¶ 7, 55-56.)[11] Nothing happened with respect to the clearance request between November 22 and November 28, 2022. Fissell followed up with Reed on November 28, reminding him that the due date for Barrera's surrender was to be Wednesday of that week. (*Id.* ¶ 45.) Reed replied the next morning and explained his understanding that Barrera was waiting for documentation from the Department, to which Fissell replied, explaining that the licensing department had received nothing from Barrera. (*Id.* ¶¶ 46-47.) The two exchanged another two emails, which confirmed that Reed could send the documentation to Fissell via email. (*Id.* ¶ 50.) Reed received no further response from Fissell. (*Id.* ¶ 50.)

Two days after the final email exchange on December 2, 2022, Fissell and a colleague went to Seguro's offices in Sinking Spring, Pennsylvania, with armed

---

[11] The Petition also alleges that "[t]he agreement concerning Barrera's license was a material part of the consideration whereby Seguro and Walsh entered consent orders . . . ." (Petition ¶ 8.) However, we consider that a legal conclusion which we need not accept as true at this stage. *Giordano*, 737 A.2d at 352.

federal agents and state law enforcement to execute a federal search warrant. (*Id.* ¶ 51.) Petitioners allege that Fissell had been working with federal law enforcement while he was negotiating the Orders. (*Id.* ¶ 52.) Fissell and his colleague served a new proposed Order on Barrera. (*Id.* ¶ 53.) After the execution of the federal search warrant and service of the new proposed Order to Barrera, Reed sent Fissell a letter to remind Fissell that "part of the consideration" for the Orders was that "Barrera [could] surrender his Pennsylvania license while he sought licensure in another state. Seguro [] and [] Walsh would not have agreed to [the Orders] absent that agreement." (*Id.* ¶ 54; Reed Aff. Ex. E.)

Moreover, Walsh's Pennsylvania license, issued October 18, 2010, had expired on March 31, 2021, and Walsh changed his resident license to the state of Delaware. (*Id.* ¶¶ 59-60.)[12] When he agreed in the Order to "surrender" his license, he believed he had no license to surrender, and that "species of relief" in the Order, "from Walsh's perspective had no real meaning or effect" given his decision to let his license expire two years prior, and that accordingly, there was no reason to contest the allegations contained in the Order. (*Id.* ¶¶ 10-11, 29, 63, 77.) Until October 18, 2022, Walsh's National Insurance Producer Registry (NIPR) report listed his expiration date as March 31, 2021, and showed a status of inactive due to failure to renew. (*Id.* ¶ 61.) However, the status of Walsh's expired Pennsylvania license changed in the NIPR from "expired" to "surrender," with a notation that such change was "[b]y Commissioner" after he signed the Order on November 1, 2022. (*Id.* ¶¶ 14, 64-65.)[13] Petitioners assert the change in status has caused regulatory

---

[12] The Petition characterizes this as "fundamental" to the agreement. (Petition ¶ 9.)

[13] The Petition further alleges the "only way these changes could have occurred is by the Department's activity, and the only way Walsh's lapsed 'license' could be 'surrendered' would be the Department reactivating the license by way of a renewal." (*Id*. ¶ 66.) "The problem . . . is that **(Footnote continued on next page…)**

6

proceedings in other states, jeopardizing Petitioners' licensure in those states, in addition to causing damage to Petitioners' reputation and business affairs. (*Id.* ¶ 15.)

On December 19, 2022, Reed advised the Department that it had breached the underlying agreement leading to the Orders by refusing to issue a clearance letter to Barrera. (*Id.* ¶ 81; Reed Aff. Ex. E.) On June 16, 2023, Petitioners once again advised the Department that it was in breach and requested that the Department vacate the Orders. (*Id.* ¶¶ 82-83.) However, on June 26, 2023, the Department replied and declined to do so. (*Id.* ¶ 84.)

Thereafter, Petitioners filed the Petition. Count I of the Petition seeks a writ of mandamus directing Respondents to vacate the Consent Orders. (Petition at 24, Wherefore Clause.) Count II seeks declaratory relief, specifically a declaration that Respondents breached the agreement forming the basis of Petitioners' decision to enter into the Orders, that Respondents breached that agreement by renewing Walsh's license without authority, that the conduct amounted to a violation of the Pennsylvania and United States Constitutions, and that the consent orders are "vacated and are no longer of any force or effect in the Commonwealth or in any other State." (*Id.* at 25-26, Wherefore Clause.)

In response, Respondents have filed four POs. The first PO demurs to Count I of the Petition under Pennsylvania Rule of Civil Procedure 1028(a)(4), Pa.R.Civ.P. 1028(a)(4), specifically arguing that Petitioners have not stated a cognizable mandamus claim. (POs ¶¶ 14-22.) The second PO demurs to Count II,

---

the [] Order is silent as to the Department renewing [] Walsh's license. Further, there was never any notice or disclosure to Walsh or his counsel that the Department would renew [his] inactive license." (*Id.* ¶ 67.) The Petition outlines the process to effect a license renewal, which requires the filing of a form and payment of a fee which Walsh never did. (*Id.* ¶¶ 69-71.) The Department's policies do not allow for license renewal more than a year after a license lapses, but Walsh's license had expired 19 months prior to the "renewal." (*Id.* ¶¶ 72-73.)

arguing that no actual controversy exists, that the Petition pleads insufficient facts to support an express agreement with respect to Barrera, and that the Orders were negotiated separately, so accordingly Petitioners' request for declaratory relief must fail. (*Id.* ¶¶ 23-29.) Its third PO again demurs to Count I but alleges it should be dismissed due to insufficient specificity under Pennsylvania Rule of Civil Procedure 1028(a)(3), Pa.R.Civ.P. 1028(a)(3), because it did not sufficiently plead the existence of a condition precedent to the other agreements with respect to Barrera. (*Id.* ¶¶ 30-40.) The fourth PO demurs to both counts, suggesting that the Petition is an attempt to unilaterally amend the terms of duly entered contracts. (*Id.* ¶¶ 41-47.)

## II.     DISCUSSION

### A.     *Mandamus*

#### 1.     Parties' Arguments

Respondents argue that Petitioners' claim is legally insufficient because there is no allegation Respondents did not issue the Orders and that Petitioners have not shown Respondents have a mandatory or ministerial duty to vacate the Orders. Respondents reject any suggestion the Orders were "inextricably related" as they were drafted and delivered separately to Walsh, Seguro, and Barrera. (Respondents' Brief (Br.) at 12.) Respondents point to language in the Orders that they represent "the entire agreement of the parties[,] . . . and[they] may not be amended or modified except by an amended order signed by all the parties hereto." (*Id.* (quoting Orders ¶ 10).) They note that the Orders were entered as of November 1, 2022, but that no "contingency [was] ever expressly discussed" prior to the December 19, 2022 email from Reed. (*Id.*) Moreover, because mandamus cannot be used to direct an agency to exercise its discretion in a particular way, in Respondents' view, this Court could

8

only direct Respondents to issue—not vacate—the Orders. They argue that, in substance, Petitioners are asking to unilaterally amend the Orders. With respect to the allegation that Respondents effected a "renewal" of Walsh's license in order to surrender it, Respondents assert that there is no requirement that a license be reactivated to be converted to surrender status and explain that "Petitioners' failure to recognize that entering into a consent order with the Department may have implications in other jurisdictions does not excuse Petitioners from their legally binding agreement with the Department." (*Id*. at 14.)

Petitioners respond that the Pennsylvania and United States Constitutions prohibit Respondents' conduct. Petitioners emphasize that "**all** interactions between the government and the individual [must be] conducted **in accordance with the protections of due process**." (Petitioners' Br. at 9-10 (quoting *Commonwealth v. Cosby*, 252 A.3d 1092, 1135 (Pa. 2021)) (emphasis added by Petitioners).) Petitioners also cite *Santobello v. New York*, 404 U.S. 257, 262 (1971), for the proposition that "[w]here the government makes a promise or agreement, 'so that it can be said to be part of the inducement or consideration, **such promise must be fulfilled**.'" (Petitioners' Br. at 10 (emphasis added by Petitioners).) Petitioners assert that vacatur of consent orders is appropriate where they are in violation of a party's rights, citing *A.J.B. v. A.G.B.*, 180 A.3d 1263, 1274 (Pa. Super. 2018), in support.[14]

Petitioners point out that while generally mandamus will not lie to compel discretionary action, mandamus can compel performance of discretionary action where the failure to do so on the part of the government actor is "**arbitrary,**

---

[14] Decisions of the Superior Court are not binding authority on this Court but may be cited for their persuasive value. *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

**fraudulent or based on an erroneous view of the [l]aw**." (Petitioners' Br. at 11 (quoting *Carino v. Bd. of Comm'rs of Armstrong Cnty.*, 468 A.2d 1201, 1203 (Pa. Cmwlth. 1983)) (emphasis added in original).) Further, they assert that promissory estoppel "can be asserted simultaneously in a mandamus action." (Petitioners' Br. at 11.) They emphasize that at this stage, we must accept as true that the parties' agreement related to Barrera was a material aspect of the overall agreement. They reiterate that "[a]s Walsh **had no license** as of March 31, **2021**, there is simply no way for such license to be inactivated or updated in November **2022** without first being reactivated," suggesting that we can reasonably deduce that inference from Exhibit H of the Petition. (*Id.* at 13 emphasis in original).). They summarize that Petitioners relied on the Barrera contingency to their detriment. They argue that the Orders are the product of "deceptive and misleading conduct" and accordingly, must be vacated, asserting that they have no adequate remedy at law. (*Id.* at 14.)

2.  Legal Principles

Meaning "we command" in Latin, Black's Law Dictionary 1046-47 (9th ed. 2009), mandamus is an extraordinary writ. *Arroyo v. Pappert*, 876 A.2d 1073, 1075 n.4 (Pa. Cmwlth. 2005). "The purpose of mandamus is not to establish legal rights, but to enforce those rights which are already established." *Id.* Our Supreme Court has said that petitioners must satisfy three elements for mandamus to be appropriate: "(1) a clear legal right in the petitioner, (2) a corresponding duty in the respondent, and (3) an absence of any other appropriate or adequate remedy." *Equitable Gas Co. v. City of Pittsburgh*, 488 A.2d 270, 272 (Pa. 1985). Mandamus relief "can never be invoked in a doubtful case[,]" so "[w]here doubt as to the [petitioner]'s right or [respondent]'s duty exists, **the remedy is neither appropriate nor available**." *Id.* at 273 (internal citation and quotation marks omitted) (emphasis added). Finally,

10

"[t]he burden of proof falls upon the party seeking this extraordinary remedy to establish [its] legal right to such relief." *Sinkiewicz v. Susquehanna Cnty. Bd. of Comm'rs*, 131 A.3d 541, 546 (Pa. Cmwlth. 2015) (quoting *Werner v. Zazyczny*, 681 A.2d 1331, 1335 (Pa. 1996)). At the preliminary objections stage, we will sustain a demurrer to a petition for review requesting mandamus where a party "has failed to establish a clear right to relief in mandamus." *Raleigh v. Pa. Hum. Rels. Comm'n*, 660 A.2d 177, 180 (Pa. Cmwlth. 1995).

> ### 3. Analysis

We first turn to the legal basis Petitioners assert establishes the legal right of Petitioners to have the Orders vacated and the duty of Respondents to do so.

Petitioners correctly state that professional licenses are property interests. (Petition ¶¶ 87-88 (citing *Telang v. Bureau of Pro. & Occupational Affs.*, 751 A.2d 1147, 1151 (Pa. 2000)).) It follows, then, and is well established that, the Commonwealth may not deprive a licensee of a license—their property—without due process. *Shah v. State Bd. of Med.*, 589 A.2d 783, 787 (Pa. Cmwlth. 1991). *See* U.S. CONST. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law."). To comport with due process, when the Commonwealth deprives a person of property, the process due is notice and an opportunity to be heard. *Tsolo v. Foster*, 561 A.2d 861, 863 (Pa. Cmwlth. 1989).[15]

Here, instead of citing to cases involving the level of process due with respect to deprivations of property, Petitioners look to cases implicating deprivation of

---

[15] The General Assembly has codified that right in the administrative context in Section 504 of the Administrative Agency Law. 2 Pa.C.S. § 504 ("No adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard.").

liberty in the criminal context. In *Cosby*, our Supreme Court vacated the conviction of a criminal defendant whom a prosecutor had promised he would not prosecute criminally in exchange for the defendant's testimony in a civil case. 252 A.3d at 1100, 1147. The Court further chronicled cases involving "prosecutorial inducements made during the guilty plea process." *Id.* at 1132. It specifically applied "contract law principles to **criminal negotiations**." *Id.* at 1133.

*Santobello*, also a criminal case, emphasized the importance of "fairness in securing agreement between **an accused and a prosecutor**." 404 U.S. at 261 (emphasis added). There, a criminal defendant accepted a plea deal on the condition that the prosecutor would not recommend a sentence. *Id.* at 263. The prosecutor breached that agreement, and the Court vacated the judgment. *Id.* at 263.

These cases, of course, emphasize the due process protections which exist to ensure that where a criminal defendant's liberty is at stake, prosecutors keep their promises. However, Petitioners, in this litigation, are **not** the accused in a criminal case, and Respondents are not criminal prosecutors. Accordingly, *Cosby* and *Santobello* are inapposite here, and in only relying on those cases and their underlying principles, Petitioners have not carried their weighty burden of establishing a clear right to relief in mandamus.

Moreover, in a case where the petitioner was requesting issuance of license via mandamus, we explained:

> [M]andamus to compel the issuance of licenses is not the proper remedy. Just because there is a due process violation does not mean that the person whose rights were violated is entitled to a license as a remedy, **only an order requiring that he or she receive the process which is due**.

*Stone and Edwards Ins. Agency, Inc. v. Dep't of Ins.*, 636 A.2d 293, 303 (Pa. Cmwlth. 1994) (emphasis added). Thus, if Petitioners could successfully make out a procedural due process violation, they would not necessarily be entitled to mandamus requiring vacatur of the Orders, but rather "the process which is due"— in this context, an opportunity to be heard.

### B. Declaratory Relief

#### 1. Parties' Arguments

Respondents contend that Petitioners' Count II seeking relief under the Declaratory Judgments Act[16] (DJA) is legally insufficient because "state officials cannot be compelled to perform their duties in a particular way." (Respondents' Br. at 15 (citing *Finn v. Rendell*, 990 A.2d 100 (Pa. Cmwlth. 2010)).) Respondents then assert that Petitioners have not pled sufficient facts to show that any agreement regarding Barrera existed before the Orders. They focus on the fact that the three agreements had been separately executed, and that they each contained language explicitly indicating each Order is the entire agreement of the respective party thereto. In the alternative, they argue that even if the Barrera agreement did exist, it implicates a non-existent controversy with Barrera, not with Petitioners. They emphasize that the Court should "decline to rewrite a negotiated agreement when performance of the alleged inaction can be ordered." (Respondents' Br. at 16.)

After generally explaining the requirements for relief under the DJA, Petitioners explain that the fundamental right to one's reputation "cannot be abridged without compliance with state constitutional standards of due process and equal protection." (Petitioners' Br. at 16 (quoting *Hatchard v. Westinghouse Broad. Co.*, 532 A.2d 346, 350 (Pa. 1987)).) Petitioners then assert that, contrary to

---

[16] 42 Pa.C.S. §§ 7531-7541.

Respondents' perspective, the actions against Petitioners and Barrera were not separate because the same counsel represented all three parties leading to virtually identical Orders. Moreover, they argue granting of declaratory relief would resolve an actual dispute between the parties. They note that, specific to Walsh, the Order has caused other jurisdictions to scrutinize Walsh, and the change of his licensure status from expired to inactivated is creating difficulty—and "had [Walsh] known that Respondents planned to [reactivate his license], he would have contested the inaccurate facts contained in the [] Order." (Petitioners' Br. at 17.) Seguro's facing more regulatory scrutiny is also, in Petitioners' view, due in part to the Department's failure to issue a clearance letter to Barrera.

      2.     <u>Legal Principles</u>

The DJA provides that "[c]ourts . . . shall have power to declare rights, status, and other legal relations. . . ." Section 7532 of the DJA, 42 Pa.C.S. § 7532. Such declarations "may be either affirmative or negative . . . and . . . shall have the force and effect of a final judgment or decree." *Id.* Section 7533 of the DJA authorizes courts to "determine[] any question of construction or validity" concerning, *inter alia*, a contract. 42 Pa.C.S. § 7533. Moreover, courts may interpret a contract before or after breach. Section 7534 of the DJA, 42 Pa.C.S. § 7534. Courts have the discretion to deny declaratory relief where it "would not terminate the uncertainty or controversy giving rise to the proceeding. . . ." Section 7537 of the DJA, 42 Pa.C.S. § 7537. Finally, courts may resolve factual disputes necessary to determine whether it should grant the requested declaratory relief. Section 7539 of the DJA, 42 Pa.C.S. § 7539.

We have explained that, to obtain declaratory relief, there must be "an 'actual controversy' indicating imminent and inevitable litigation and a direct, substantial,

14

and present interest." *Cnty. Comm'rs Assoc. of Pa. v. Dinges*, 935 A.2d 926, 931 (Pa. Cmwlth. 2007) (en banc). "A substantial interest is an interest exceeding the interest of all citizens in procuring obedience to the law; an interest is direct if there is a causal connection between the asserted violation and the harm complained of; an interest is immediate if the causal connection is neither remote nor speculative." *Finn*, 990 A.2d at 103.

We must also look to the legal rules around consent decrees to determine whether declaratory judgment might lie here. "As a general rule, orders entered by consent of the parties are not appealable." *Game Comm'n v. Kapec*, 303 A.3d 866, 870 (Pa. Cmwlth. 2023). Our Supreme Court has explained,

> [a]lthough a consent decree does not represent a legal determination by a court or administrative tribunal of the matters in controversy, it nevertheless has important consequences. A consent decree has a [r]es judicata effect, binding the parties with the same force and effect as a final decree rendered after a full hearing upon the merits. In the absence of fraud, accident or mistake, a court has neither the power nor the authority to modify or vary the terms of a consent decree. Nor is such a decree subject to a collateral attack.

*Pa. Hum. Rels. Comm'n v. Ammon K. Graybill, Jr., Inc.,* 393 A.2d 420, 422-23 (Pa. 1978) (internal citations omitted). *See also Dravosburg Hous. Ass'n v. Borough of Dravosburg*, 454 A.2d 1158, 1161 (Pa. Cmwlth. 1983) ("[I]n the absence of fraud, accident or mistake, a court has neither the power nor the authority to vary or modify the terms of a consent decree."). Moreover, in interpreting a consent order, courts must examine them "in accordance with the principles governing all contracts" because they are, in essence "judicially sanctioned contract[s.]" *Commonwealth by Shapiro v. UPMC*, 188 A.3d 1122, 1131 (Pa. 2018).

15

A basic principle in contract law is that "[a]n integration clause which states that a writing is meant to represent the parties' entire agreement is . . . a clear sign that the writing is meant to be just that . . . ." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004). An integration clause usually signifies that the contract "expresses **all** of the parties' negotiations, conversations, and agreements made prior to its execution." *Id.* (emphasis added). Relatedly, the parol evidence rule requires that, where the contract is the entire agreement, "evidence of any previous oral or written negotiations or agreements involving **the same subject matter** . . . is almost always **inadmissible** to explain or vary the terms of the contract." *Id.* at 436-37. (emphasis added).

### 3. Analysis

First, we agree with Respondents that the facts alleged in the Petition do not show that Seguro and Walsh's agreement to the Orders was conditioned on any agreement related to Barrera. On October 25, Fissel emailed Reed and said "I spoke to the individuals on my end and it appears they would be ok [sic] with allowing [] Barrera to simply surrender his PA license . . . and not have a [consent order issued]." (Petition ¶ 35; Reed Aff. Ex. A.) Those emails are silent as to Walsh and Seguro except to indicate that their Orders "would remain but can be adjusted to Surrenders." (*Id.*) After determining that, Reed and Fissel proceeded to separately negotiate the Walsh and Seguro Orders. (*Id.*) On October 26, Reed sent an email asking for specific language to be added and stricken in the Walsh and Seguro Orders, with no mention of Barrera. (*Id.*) Between October 26 and 28, the two exchanged several emails going back and forth about whether amendments to the Orders' language would be acceptable. Petitioners had an opportunity, as evidenced by Reed's negotiations with Fissel, to add language to the Orders to make clear that

16

their agreement to the Orders was conditional on Respondents' alleged promises to Barrera. But no such negotiation occurred, and it was not until December 19, 2022—more than a month after the Orders had been executed and delivered to Respondents—that Reed stated plainly that Petitioners "would not have agreed to a consent order absent that agreement." (*Id.* Ex. E.)

Next, we address the issue of the alleged reactivation of Walsh's license—for which he seeks a declaration that "Respondents' [sic] further breached the agreement that lead [sic] to Petitioners' signing and agreeing to the [] Orders by renewing the expired Pennsylvania license of Walsh without consent or authority." (Petition at 25, Wherefore Clause, ¶ (b).) The plain terms of the Order specifically state that "[a]ll licenses of [Walsh] to do the business of insurance are hereby **surrendered**." (Petition, Pennsylvania Order Walsh, ¶ 5(b) (emphasis added).) The NIPR report, after entry of the Walsh Order, then said "Inactive By Commissioner." (Petition at Ex. 6.) Further down, it specifies as "Date of Action" November 1, 2022, which says "License, Surrendered" due to "Fraudulent/Dishonest Practices." (*Id.*) Contract law, as discussed above, relevant to consent order construction, requires us to look at the plain language of the Order to determine the parties' intent. *UPMC*, 188 A.3d at 1132 ("Extrinsic evidence **may be employed to ascertain the meaning of contractual terms only when they are ambiguous**.") (emphasis added).

Here, the Order unambiguously stated that Walsh was surrendering his license, and so it follows that his NIPR report reflects a surrender. We need not accept as true any allegations which conflict with the documents appended to the Petition, nor must we accept the legal conclusions contained therein. *Allen v. Dep't of Corr.*, 103 A.3d 365, 369 (Pa. Cmwlth. 2014). Petitioners allege that Walsh **thought** the surrender language of the Order was "meaningless." (Petition ¶ 63.)

17

The plain language of the Order to which Walsh agreed clearly supports the Department's action as reflected in the NIPR report. We need not, consistent with our standard of review, accept as true Petitioners' conclusion of law as to the meaning and effect of that contractual language. *Allen*, 103 A.3d at 369. Accordingly, we can say with certainty the law will not permit us to declare that Respondents renewed Walsh's license without authority. (Petition at 25, Wherefore Clause, ¶ (b).)

We must next consider whether, as Respondents contend, Petitioners are simply trying to have this Court reform duly entered consent orders. As discussed above, absent, *inter alia*, fraud, a court may not reform the terms of a consent order. *Ammon K. Graybill, Inc.*, 393 A.2d at 422. We have already rejected Petitioners' arguments about the fraud the Petition alleges—specifically the Barrera agreement and alleged reactivation of Walsh's license. Accordingly, we agree with Respondents that we may not reform or vacate the Orders.

Moreover, to the extent the Petition attempts to state a fraudulent inducement claim within Count II, ("Respondents[] made misrepresentations of facts to Petitioners and their counsel which induced Petitioners to enter the [Orders]," (Petition, Wherefore Clause, ¶ (c)) that claim must also fail. To state a claim for fraudulent inducement under Pennsylvania law, it is necessary to plead sufficient facts to satisfy six elements:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179 (Pa. Super. 2005). *See also SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 206 (3d Cir.

18

2022) ("The six elements of fraud apply . . . to fraudulent inducement . . . .") (applying Pennsylvania law).[17]

Beyond baldly asserting that misrepresentations induced Petitioners to enter into the Orders, Petitioners do not develop this claim by citing any relevant authority in their Petition or in their brief. (*See*, *e.g.*, Petitioners' Br. at 15-18.)[18] Petitioners suggest the Barrera agreement "**was** a material term of the overall agreement." (*Id.* at 12 (emphasis in original).) But absent from the Petition are specific facts that demonstrate **why** that agreement would have been material, and as discussed above, the negotiations themselves also belie the materiality of that agreement. Further, the exhibits attached to the Petition run counter to the existence of the requisite causal relationship between the alleged misrepresentations and the injury of which Petitioners complain, namely, regulatory scrutiny in other jurisdictions. (Petition ¶ 15.) (*See, e.g.* Petition, Ex. 2, Louisiana Fine ("Seguro [] consented to the imposition of a $300[] fine imposed against the agency's license by the Kansas Insurance Department . . . . This administrative action was not reported to the [Louisiana Insurance Department] within 30 days."); *Id.* at Washington Order ("On November 30, 2021, the Insurance Commissioner received notification . . . that the State of Indiana imposed an administrative action against [Walsh] on November 2, 2021.") (emphasis added); *Id.* at Kansas Order ("On January 28, 2022, [Seguro] applied for the renewal of their Kansas [license] . . . . [Seguro] did not report [a Utah] administrative action from the Utah Insurance Commissioner dated December 27,

---

[17] Though not binding on this Court, we may turn to federal district and circuit court decisions for their persuasive value on questions of state law. *Zablow v. Bd. of Educ. of Sch. Dist. of Pittsburgh*, 729 A.2d 124, 128 (Pa. Cmwlth. 1999).

[18] Pennsylvania law requires a heightened pleading standard for fraud, specifically, "a pleading of fraud must be done with particularity and requires specific allegations." *Skonieczny v. Dep't of Cmty. & Econ. Dev.*, 853 A.2d 1172, 1181 (Pa. Cmwlth. 2004).

19

2021."). In sum, Petitioners have not factually or legally developed a fraudulent inducement claim, so to the extent we can read the Petition to advance such a claim, it fails.

In addition, Walsh and Seguro agreed in each Order that it constituted the entire agreement between Seguro and the Department and Walsh and the Department. (*See* POs ¶ 12 ("The [] Orders further state that they are each 'the entire agreement of the parties with respect to the matters referred to therein, and . . . may not be amended or modified except by an amended order signed by all the parties thereto.'").) (*See also* Answer to POs ¶ 12 ("Admitted that this language is contained in the [] Orders . . . . [T]hese [] Orders were procured unconstitutionally. . . .").) Of course, the "entire agreement" language—an integration clause—alone suggests the Order was meant to include the **entire** agreement. *Yocca*, 854 A.2d at 436. Moreover, a review of the Orders satisfies us that they are "complete within [themselves], couched in such terms as import a complete legal obligation . . . ." *Id.* Petitioners have not alleged that a term was "**omitted** from the [Orders] because of fraud, accident, or mistake." *Id.* at 437 (emphasis added). The parol evidence rule bars us, then, from considering competing interpretations about the subject matter of these agreements, including supposed agreements or preconditions to their effect. *Id.* at 436. Interpreting the Orders as contracts, as we must, we can say with certainty the law will not permit us to declare the Orders "vacated and [] no longer of any force or effect . . . [,]" (Petition at 26, Wherefore Clause, ¶ (e)),[19] or that

---

[19] Subparagraph (d) requests a declaration that Respondents have violated Petitioners' constitutional rights. (Petition, Count II at Wherefore Clause, ¶ (d).) As discussed at length with respect to Count I, Petitioners have erroneously relied on due process arguments rooted in criminal law. Moreover, in the Orders, Petitioners expressly waived their due process right to an opportunity to be heard. (Petition, Pennsylvania Order, ¶ 2.) Moreover, to the extent the constitutional claim is based on the existence of the Barrera agreement as a condition to entering the Orders, we also reject the due process claim on that basis.

20

"Respondents' [sic] made misrepresentations of facts to Petitioners and their counsel which induced Petitioners to enter the Consent Orders[,]" (Petition at 25-26, Wherefore Clause, ¶ (c).)

We also address Respondents' argument that Petitioners have not alleged facts tending to show an actual controversy as required by the DJA. Petitioners request a declaration that "Respondents breached the agreement that lead [sic] to Petitioners' signing and agreeing to the [] Orders." (Petition at 25, Wherefore Clause, ¶ (a).) Here, it is clear that Petitioners' interest in the resolution of this question is substantial, as it "exceed[s] the interest of all citizens in procuring obedience to the law. . . ." *Finn*, 990 A.2d at 103. The allegations that these Orders are impacting Petitioners specifically satisfies us that they have a "substantial" interest in the resolution of this dispute.

Petitioners allege that, but for the underlying agreement regarding Barrera, they would not have entered into the Orders. However, as discussed above, the harm complained of—mostly actions taken by other jurisdictions as a result of the admissions in these Orders—would have occurred even if Respondents had upheld their end of the bargain with respect to Barrera. Therefore, on its face, the Petition does not allege a **direct** connection between Respondents' failure to uphold their end of the Barrera bargain and the complained-of harm here—namely, all of the consequences flowing from signing the Orders. Accordingly, the law says with certainty that no recovery is possible with respect to subparagraph (a) of the requested declaratory relief.

Finally, we must determine whether the facts as alleged satisfy the immediacy requirement—namely, that "the causal connection is neither remote nor speculative." *Id.* Here, the connection between Respondents' failure to uphold the

21

alleged Barrera agreement and the alleged harm to Petitioners' reputation, business, and the regulatory proceedings against them in other jurisdictions is remote. Indeed, the Petition implies Petitioners **would** have entered into the same Orders had they believed Respondents would truly uphold the underlying agreement regarding Barrera. (*See*, *e.g.*, Petition, ¶ 79; Reed Aff. Ex. E.) If Respondents had upheld their end of the bargain, all the same harm would ostensibly have occurred. Moreover, we agree with Respondents that to the extent Respondents' failure to uphold its alleged agreement with Barrera has any separate deleterious effect, it is Barrera who should seek redress for that breach. We conclude that Petitioners have not alleged a substantial, immediate, and direct interest with respect to the "underlying agreement," and accordingly, we can say with certainty the law will not permit a declaration as to subparagraph (a) of the requested declaratory relief. (Petition at 25, Wherefore Clause, ¶ (a).) Therefore, we sustain the demurrer to Count II of the Petition.

## III. CONCLUSION

For all the foregoing reasons, the Court sustains Respondents' first and second POs and dismisses the Petition in its entirety.[20]

**RENÉE COHN JUBELIRER,** President Judge

---

[20] Having sustained Respondents' first two POs, we dismiss the remaining two as moot.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Seguro Medico, LLC and Arthur : 
Wayne Walsh, : 
                 Petitioners : 
                 : 
           v. :   No.  293 M.D. 2023
                 : 
Michael Humphreys, in his official : 
capacity as Acting Commissioner of : 
the Pennsylvania Department of : 
Insurance, David Buono, in his : 
official capacity as Acting Deputy : 
Insurance Commissioner, Michael : 
Fissel, in his official capacity as the : 
Chief of the Department of Insurance : 
Field Investigations/Enforcement : 
Bureau, and the Commonwealth of : 
Pennsylvania Department of : 
Insurance, : 
                 Respondents : 

# O R D E R

**NOW**, January 3, 2024, Preliminary Objections I and II to Seguro Medico, LLC and Arthur Wayne Walsh's  Petition for Review (Petition) are **SUSTAINED.** Preliminary Objections III and IV are **DISMISSED** as moot.  Accordingly, the Petition is **DISMISSED**.

 

_____
**RENÉE COHN JUBELIRER,** President Judge